# Illinois Official Reports

## Appellate Court

---

**_Carolina Casualty Insurance Co. v. Estate of Sperl_,**
**2015 IL App (3d) 130294**

---

Appellate Court
Caption

CAROLINA CASUALTY INSURANCE COMPANY, DEAN HENRY, TOAD-L DRAGON FLY EXPRESS, INC., LUANN BLACK, and MICHAEL SMITH, Plaintiffs-Appellees, v. THE ESTATE OF JOSEPH SPERL, SUSAN SPERL, THE ESTATE OF THOMAS SANDERS, and ANNETTE SANDERS, Defendants-Appellants (C.H. Robinson Company; CH. H. Robinson Company, Inc.; CH. Robinson Worldwide, Inc.; C.H. Robinson International, Inc.; and C.H. Worldwide-LTL, Inc., Defendants-Appellees; William Taluc, Edward Dusik, Michael Bundy, Donald Kaminky, Shirley Kaminky, Charles Ingram, Marie Hernandez, Trisha Vagas, Proven St. Joseph Medical Center, Insure One, Holmes, Murphy and Associates, Auto Owners-Caywood Insurance, Clarendon National Enterprise Leasing, Garland Gherke Trucking, Inc., Advocate Good Samaritan Hospital, The Plainfield Fire Department, Lifeflight, Paula Saintvillers, Augustine Hernandez, United Healthcare, Inc., Midwest Trauma, LLC, Blue Cross and Blue Shield of Illinois, Farmers Insurance Group, American Modern Home Insurance Company, and Unknown Claimants, Defendants).

District & No.

Third District
Docket Nos. 3-13-0294, 3-13-0310 cons.

Filed
Rehearing denied

January 27, 2015
February 25, 2015

Held

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

In an action arising from a multiple-vehicle collision on an interstate highway resulting in numerous deaths and injuries and many claims against the policy issued by plaintiff insurer, the trial court, in the interpleader action filed by plaintiff insurer in an attempt to resolve many of the claims against the proceeds of plaintiff's policy, properly granted plaintiff's motion to dismiss the estates, which had already been paid the full amount of the verdict, minus the vacated survivor awards, since the estates had been paid in full, they had no interest in

the disputed funds, and the trial court had properly denied the estates' motions for leave to file counterclaims in the instant interpleader case.

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 04-CH-1195; the Hon. Barbara N. Petrungaro, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Martin Healy, Dennis M. Lynch (argued), Jack Cannon, and Patrick C. Anderson, all of Healy Law Firm, of Chicago, for appellants Estate of Joseph Sperl and Susan Sperl.

John L. Cantlin and Timothy B. Cantlin, both of Cantlin Law Firm, of Ottawa, for appellants Estate of Thomas Sanders and Annette Sanders.

Jason Orleans (argued) and Bradley A. Bertkau, both of Chilton, Yambert & Porter, LLP, of Waukegan, for appellee Carolina Casualty Insurance Company.

David M. Lewin (argued), of Querrey & Harrow, Ltd., of Chicago, for appellees Luann Black, Dean Henry, and Toad-L Dragon Fly Express, Inc.

Mark J. Sobczak (argued), Don R. Sampen, Edward M. Kay, and Thomas H. Ryerson, all of Clausen Miller, P.C., of Chicago, for other appellees. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion. Presiding Justice McDade and Justice Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1 Plaintiff, Carolina Casualty Insurance Company (CCIC), on behalf of all of the listed plaintiffs, filed an interpleader action against several defendants to resolve multiple potential

claims that existed as to the proceeds of a CCIC insurance policy arising out of a multiple-vehicle traffic accident. Prior to trial, CCIC moved to voluntarily dismiss (735 ILCS 5/2-1009(a) (West 2012)) defendants, the estates of Joseph Sperl and Thomas Sanders, from the action, alleging that the claims of the estates had been satisfied in full and that the estates no longer had an interest in the disputed funds. After written and oral arguments on the matter, the trial court granted CCIC's motion to dismiss the estates from the interpleader action and also denied motions that had been made by the estates for leave to file counterclaims for breach of settlement contract and garnishment. The estates appeal. We affirm the trial court's judgment.

¶ 2                                                         FACTS

¶ 3        The facts of the underlying traffic accident have been set forth in a previous appeal (*Sperl v. C.H. Robinson Worldwide, Inc.*, 408 Ill. App. 3d 1051, 1052-56 (2011)) and will only be repeated here as necessary to place this appeal in context. On April 1, 2004, DeAn Henry was driving her tractor-trailer (the truck) northbound on Interstate 55 near Plainfield, Illinois, when she noticed that the vehicles in front of her were not moving. Henry was unable to stop her truck in time and ran over several of the vehicles, causing a multiple-vehicle collision. As a result of the collision, Joseph Sperl and Thomas Sanders were killed, William Taluc was severely injured, and several other people suffered personal injuries and/or property damage.

¶ 4        Henry owned the truck she was driving and operated it under the federal motor carrier authority of Dragon Fly Express, Inc. (Dragon Fly), which was owned by LuAnn Black and Michael Smith. C.H. Robinson Worldwide, Inc. (CHR), brokered the load that Henry was hauling that day. At the time of the accident, Dragon Fly was covered by a commercial transportation policy, which had been issued to it by CCIC. The insurance policy contained a combined single liability limit of $1 million for bodily injury and property damage and obligated CCIC to pay all interest that accrued on any judgment that was entered.

¶ 5        In July 2004, CCIC filed the instant interpleader action in Will County on behalf of all of the listed plaintiffs to resolve the multiple potential claims against the policy resulting from the accident. Named as defendants in the action were the 2 estates, CHR, and over 20 others. CCIC alleged in its complaint, which was amended several times, that because of the severity of the damage caused, the liability limits of the policy were insufficient to satisfy all of the claims of the potential claimants.

¶ 6        After the interpleader action was filed, the estates and Taluc filed separate lawsuits, which were later consolidated for trial, against Henry, Dragon Fly, and CHR for wrongful death, survival, and personal injuries that were due to Henry's negligent operation of the truck. CHR filed a claim for contribution against Henry and Dragon Fly, but that claim was severed from the wrongful death, survival, and personal injury action.

¶ 7        In March 2009, the wrongful death, survival, and personal injury action proceeded to a jury trial. At the trial, Henry and Dragon Fly admitted liability. The only issues before the jury were: (1) whether Henry was CHR's agent so as to make CHR vicariously liable for the injuries; and (2) the nature and amount of damages to be awarded. At the conclusion of the trial, the jury found that Henry was the agent of CHR and that CHR was vicariously liable for the injuries. The jury awarded damages of $7.25 million to Sperl's estate, $8.75 million to Sanders's estate, and $7.775 million to Taluc, for a total damages award of $23.775 million. A portion of the damages award to each estate ($250,000 each for a total of $500,000) was for conscious pain and suffering of the decedents prior to their deaths (the survival awards).

¶ 8    CHR filed a posttrial motion. Dragon Fly and Henry did not. In its motion, CHR asserted, among other things, that the survival awards in favor of the estates were not supported by the evidence and had to be vacated because there was insufficient evidence presented of conscious pain and suffering of the decedents. The trial court agreed, and in September 2009, it entered an order granting CHR's request to vacate that portion of the judgment.

¶ 9    CHR appealed from the underlying judgment, contesting the jury's finding of agency and the trial court's refusal to give the jury an instruction on apportionment of damages between CHR and Dragon Fly. Henry and Dragon Fly did not appeal. The estates cross-appealed the vacation of the survival awards but later withdrew their appeal. In March 2011, this court affirmed the trial court's judgment, finding, among other things, that CHR's liability was not capable of being apportioned because it was entirely derivative and was based upon *respondeat superior*, rather than upon CHR's own negligence or fault in causing the accident. See *Sperl*, 408 Ill. App. 3d at 1060-61. CHR filed a petition for leave to appeal to the supreme court, but that petition was denied.

¶ 10   Before, during, and after the trial in the underlying tort case, CCIC offered its entire policy limit of $1 million to the estates. Shortly after the trial court ruled upon CHR's posttrial motion, CCIC again tendered its policy limit to the estates. More than two years later, in November 2011, after the posttrial motion had been ruled upon, the survivor awards had been vacated, the judgment had been affirmed on appeal, and CHR had tendered to the estates the full amount of the verdict (minus the survivor awards), the estates sent CCIC letters attempting to accept CCIC's previous offer of the policy limits and to apply the insurance proceeds to the satisfaction of the survivor awards that had been vacated, plus interest. CCIC refused to pay those amounts.

¶ 11   In September 2012, in the instant interpleader action, the estates filed motions requesting leave to file counterclaims against all or most of the listed plaintiffs for breach of contract to settle the case and to institute garnishment proceedings against CCIC. After written and oral arguments on the matter, the estates' requests were denied.

¶ 12   In January 2013, CCIC filed a motion to voluntarily dismiss the estates from the interpleader action, arguing, among other things, that the estates no longer had any interest in the disputed funds because the judgment had been satisfied in full by CHR. The estates objected to the motion to dismiss and moved for reconsideration of their motions for leave to file counterclaims. After written and oral arguments on the matter, the trial court, in April 2013, granted CCIC's motion to voluntarily dismiss the estates from the interpleader action, denied the estates' motion for reconsideration, and entered an agreed order, pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), that there was no just reason to delay enforcement or appeal. Sperl's estate moved to stay the interpleader proceedings pending an appeal. The trial court granted the motion to stay in May 2013, and the estates subsequently brought the instant appeal.

¶ 13                                    ANALYSIS

¶ 14   As their first contention on appeal, the estates argue that the trial court erred in granting CCIC's motion to voluntarily dismiss the estates from the interpleader action. The estates assert that they are necessary and indispensible parties in the interpleader action; that they have stated legitimate claims to the disputed funds; and that they should be allowed to prove those claims, like every other defendant in the interpleader case. The estates' assertion that they have

legitimate claims to the disputed funds is based upon their contention that the survival awards ($250,000 for each estate) against Henry and Dragon Fly still stand because Henry and Dragon Fly did not file a posttrial motion to challenge those awards and because Henry and Dragon Fly are unable to reap the benefit of the posttrial motion that was filed by CHR to that effect, since the judgment in the underlying case is not treated as a single unit.

¶ 15     CCIC argues that the trial court's ruling was proper and should be affirmed. CCIC asserts that the estates do not have a claim to the disputed funds because their judgments in the underlying case have been satisfied in full. According to CCIC, the trial court's ruling that the estates failed to prove the survival awards (conscious pain and suffering) applies to all of the defendants in the underlying case equally, regardless of whether each defendant filed a posttrial motion, because a judgment is a single unit and because a judgment that is erroneous to one defendant is erroneous as to all defendants. CCIC asserts further that it would be prejudicial and inequitable to leave the survival award standing against any of the defendants in the underlying case when the trial court found that the estates failed to prove conscious pain and suffering. CCIC also asserts that it had an absolute right to seek voluntary dismissal because the estates no longer had any interest in the disputed funds and that the trial court had discretion to grant CCIC's motion for voluntary dismissal.

¶ 16     Henry and Dragon Fly make similar arguments to those of CCIC. In addition, Henry and Dragon Fly assert that voluntary dismissal was proper because the underlying judgment has been satisfied in full and the estates have no basis for any additional recovery. Henry and Dragon Fly point out that the error that was remedied in the trial court's ruling on CHR's posttrial motion–the estates' failure to prove conscious pain and suffering–applied to all of the defendants in the underlying case equally, regardless of whether each defendant filed a posttrial motion, and that this was not a case where the proofs differed in some regard as to each defendant, so that the trial court's ruling on the posttrial motion should have been treated differently among the defendants in the underlying case. Henry and Dragon Fly point out further that this court already ruled in the previous appeal that there is only one judgment in the underlying case and that there could be no allocation of damages since CHR's liability was exclusively derivative.

¶ 17     CHR echoes the arguments made by CCIC, Henry, and Dragon Fly. In addition, CHR asserts that the trial court's ruling on the posttrial motion should also apply to Henry and Dragon Fly to avoid absurdity since the underlying case involves a single judgment award against joint tortfeasors and because the trial court did not limit its ruling on the posttrial motion to only the judgment against CHR. To the extent that the estates claim that the trial court lacked jurisdiction to modify the judgment in the underlying case as to Henry and Dragon Fly, CHR contends that the argument is erroneous because: (1) the judgment was not final at that point since CHR's claim for contribution was still pending and the trial court had not yet made a Supreme Court Rule 304(a) finding; and (2) CHR's posttrial motion was sufficient to preserve the trial court's judgment over the estates' survival claims.

¶ 18     Initially, the parties disagree as to the appropriate standard of review. The estates and CHR claim that *de novo* review applies because when a voluntary dismissal is granted as a matter of right, the trial court does not exercise its discretion and because the trial court is in no better position than this court to make that determination. CCIC, Henry, and Dragon Fly, on the other hand, assert that the appropriate standard of review is abuse of discretion. Our review of the law in this area has not provided a clear answer. The case law that exists, although not directly

on point, suggests that the appropriate standard of review is an abuse of discretion. See *Bochantin v. Petroff*, 145 Ill. 2d 1, 6-8 (1991); *Quigg v. Walgreen Co.*, 388 Ill. App. 3d 696, 699 (2009). We will, therefore, apply an abuse of discretion standard to the trial court's ruling on plaintiffs' motion to voluntarily dismiss. The threshold for finding an abuse of discretion is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *In re Leona W.*, 228 Ill. 2d 439, 460 (2008).

¶ 19 The underlying question as to both of the issues raised by the estates in this appeal is whether the trial court's vacation of the survival awards applies to Henry and Dragon Fly in addition to CHR or whether it applies only to CHR since CHR was the only party that filed a posttrial motion to challenge the survival awards. In arguing that the trial court's ruling also applies to Henry and Dragon Fly, plaintiffs and CHR rely upon the unit-judgment rule. At common law, a judgment against joint defendants was regarded as an "entirety" which stood or fell as a single unit. *Chmielewski v. Marich*, 2 Ill. 2d 568, 570 (1954). Under the common-law unit-judgment rule, a judgment against two or more joint defendants was indivisible and could not be vacated by a trial court or reversed by a reviewing court as to one of the defendants alone, even if the judgment was correct as to the other defendants. *Id.* at 570-71.

¶ 20 However, our supreme court in *Chmielewski* abolished the broad application of the unit-judgment rule in favor of a case-by-case application, stating:

"Upon a full consideration of the problem, we are of the opinion that the question of whether or not a judgment against defendants who are liable jointly, or jointly and severally, is to be treated as a unit should not be determined arbitrarily by rule of thumb, but on the basis of those factors which have to do with the substantive rights of the litigants. Whatever may have been the considerations which prompted the original adoption of the broad common-law rule, we have been unable to discover any which are now relevant. The decisions in this State are devoid of any argument in its favor, and none is suggested by counsel here. We hold, therefore, that when a judgment or decree against two or more defendants is vacated as to one of them, it need not for that reason alone be vacated as to any of the others, and should not be vacated as to any of the others unless it appears that because of an interdependence of the rights of the defendants or because of other special factors it would be prejudicial and inequitable to leave the judgment standing against them." *Id.* at 576.

We believe that statement to be a correct statement of the rule as it exists today. See, *e.g.*, *Downs v. Rosenthal*, 2013 IL App (1st) 121406, ¶ 20.

¶ 21 Applying that rule in the present case, we note first that the survival awards need not be vacated as to Henry and Dragon Fly merely because the awards were vacated as to CHR. See *Chmielewski*, 2 Ill. 2d at 576. Despite the estates' assertion that the broad application of the unit-judgment rule still applies, the supreme court made it clear in *Chmielewski* that the rule will no longer be applied in a broad manner. See *id.* Thus, if there were nothing more to the analysis in the present case, Henry and Dragon Fly would still be obligated to satisfy the survival awards because of their failure to file posttrial motions. See 735 ILCS 5/2-1203(a) (West 2012); *Putz v. Schulte*, 104 Ill. App. 3d 128, 128-29 (1982) ("[a] party who seeks post-judgment relief must file a post-trial motion within 30 days after entry of the judgment, or within a court-authorized extension thereof, and that the time for filing of the post-trial motion

is not extended by the timely filing of a post-trial motion by another party"). That having been said, however, we find that this is the type of case where to leave the survival awards standing against Henry and Dragon Fly would be prejudicial and inequitable. See *Chmielewski*, 2 Ill. 2d at 576.

¶ 22 In this case, the trial court found that the estates had failed to prove the conscious pain and suffering of the decedents prior to their deaths as necessary for the survival awards to be made. It would be inequitable, therefore, to hold Henry and Dragon Fly to that portion of the judgment when it was not proven at trial. See *Downs*, 2013 IL App (1st) 121406, ¶¶ 18-25 (in a case where the trial court found that the plaintiff had ownership rights in a limited liability company and was entitled to a money judgment for the profits he was owed because of those rights, the appellate court held that it would be prejudicial and inequitable to leave the money judgment standing, if one existed, against the individual members of the limited liability company for those profits when the appellate court had determined in a previous appeal that the trial court was incorrect in its underlying decision and that the plaintiff did not have ownership rights in the company, even though the individual members of the company had never appealed the trial court's underlying decision and that decision had become a final judgment against the individual members of the company);[1] *cf. Relph v. Board of Education of DePue Unit School District No. 103*, 84 Ill. 2d 436, 443-44 (1981) (where the supreme court had decided the same legal issue in a different case prior to the second appeal, the appellate court should have followed the supreme court's decision on that issue in the second appeal, regardless of the law of the case doctrine, to avoid illogical results). Accordingly, we find that the survival awards must be vacated as to Henry and Dragon Fly, in addition to CHR. Since the survival awards have been vacated, the judgments owing to the estates have been satisfied in full, and the estates have no interest in the disputed funds. It was proper, therefore, for the trial court to grant plaintiffs' voluntary motion to dismiss the estates from the interpleader case as they no longer have an interest in the action.

¶ 23 As their second point of contention on appeal, the estates assert that the trial court erred in denying their motion for leave to file counterclaims in the instant case to allege a claim of breach of contract to settle and to institute garnishment proceedings against CCIC. However, as those claims are based upon the assertion that the survival awards still stand against Henry and Dragon Fly, an assertion that we rejected in our decision on the previous issue, we need not address that contention further here. The judgments have been satisfied in full, and the estates have no further claim against Henry and Dragon Fly or against their insurer, CCIC. The trial court, therefore, properly denied the estates' motions for leave to file counterclaims in the instant interpleader case.

¶ 24                                III. CONCLUSION
¶ 25 For the above-stated reasons, we affirm the judgment of the circuit court of Will County.

¶ 26 Affirmed.

---

[1]The appellate court's decision in *Downs* was also based, in part, upon the law that applies to limited liability companies–that the members or managers of the company are generally not personally liable for the debts, obligations, or liabilities of the company. See *Downs*, 2013 IL App (1st) 121406, ¶ 24.