*In re* ESTATE OF WALT H. COLEWELL, Incompetent—(FELICIA COLEWELL, Conservator of the Estate of Walt H. Colewell, Incompetent, Conservator-Appellant, *v.* BEN A. TRUSE, Claimant-Appellee.)

(No. 56123; )

First District—December 7, 1972.

Posanski, Krohn & Jacobs, of Chicago, for appellant.

Thomas Ryan Rees, of Chicago, for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Ben A. Truse filed a claim for $1,400 against the estate of Walt H. Colewell, incompetent. The claim was allowed and the conservator of the estate appeals, contending that the claim was not established by competent evidence.

Felicia Colewell, the wife of the incompetent, was appointed conservator of her husband's estate on April 28, 1966. The estate included a real estate office and several pieces of income producing property. Roman Posanski, the attorney representing the conservator, asked Truse if he would be interested in collecting the rents and maintaining the general routine of the business. Truse agreed to take charge of the office

and manage the properties. He did so for 16 weeks, from early May through August 20, 1966.

During the period of his services, Truse collected approximately $29,000 in rents. He stated that he worked five or six days per week for an estimated total of 60 hours a week. His claim alleged that Posanski agreed that he would be paid $175 a week, which totaled $2,800, and that this was the fair, reasonable and customary charge for such services. He further alleged and testified that he had received only one-half of this sum although Posanski, the conservator's agent, had repeatedly promised to pay the balance of $1,400.

The principal issue between the parties centers around section 2 of the Evidence Act (Ill. Rev. Stat., 1969, ch. 51, para. 2), which prohibits a party from testifying in his own behalf when the adverse party defends as the conservator of a person who is mentally ill. At the commencement of the trial Truse took the stand in his own behalf but an objection to his testifying, on the ground that he was the party adverse to the conservator, was sustained. The claimant then called Posanski as a witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, para. 60), and examined him concerning their understanding and dealings. Upon the conclusion of Posanski's testimony the claimant resumed the witness stand. The conservator again objected to his competency. Truse asserted that he had become a competent witness by virtue of Posanski's testimony and the second exception to section 2—which provides that if an agent of any deceased person testifies in behalf of any person suing or being sued to any conversation or transaction between himself and the opposite party, the opposite party may testify concerning the same conversation or transaction. The conservator argued that Posanski's testimony did not remove Truse's disqualification because his testimony was not elicited by the protected party but by the claimant himself. The court allowed Truse to testify.

After the claimant was permitted to testify over objection, Posanski cross-examined him. The court had expressed the desire "to hear everything" and at the conclusion of the claimant's case Rosanski testified for the conservator. He said that the Colewell estate was in poor condition and that Truse agreed to work for $100 a week, subject to readjustment if the estate were able to pay more; that he had worked for about 15 weeks, had been paid for 14 and had one week's salary coming.

■■ The prohibition of section 2 cannot be circumvented by the stratagem employed in this case. If Truse was incompetent to testify in support of his claim the section 60 testimony of Posanski did not render him competent. A person who is disqualified from testifying by section 2 of

the Evidence Act cannot overcome his disqualification by calling an adverse party or the party's agent under section 60 of the Civil Practice Act and using this involuntary testimony to open the door for his own testimony. Posanski did not testify in behalf of any person who was suing or being sued in a representative capacity; he was called as an adverse witness for cross-examination. It was error, therefore, to permit Truse to testify under the cloak of the second exception to section 2. (*Cf. Loeb v. Stern* (1902), 198 Ill. 371.) The error, however, was inconsequential because, in our opinion, Truse was a competent witness in his own right and should have been allowed to testify when he was first called as a witness.

■■ A literal reading of section 2 seems to uphold the court's ruling which prevented Truse from initially testifying in his own behalf. Section 2 provides:

> "No party to any civil action * * * shall be allowed to testify therein of his own motion, or in his own behalf * * * when any adverse party sues or defends as the trustee or conservator of any habitual drunkard, or person who is mentally ill or mentally deficient, or as the executor, administrator, heir, legatee or devisee of any deceased person * * * unless when called as a witness by such adverse party so suing or defending * * *." Ill. Rev. Stat., 1969, ch. 51, para. 2.

This statute modifies section 1 of the Evidence Act which removes the incompetency of witnesses imposed on interested parties by the common law. Section 2 limits the freedom granted by section 1; it prevents a party from testifying on his own motion against a protected party when the protected party may be subjected to a claim which cannot be refuted due to the inability of the protected party's principal to testify. Numerous cases have stated that the purpose of section 2 is to place the parties in a comparable position by protecting estates from fraudulent claims through the elimination of the living claimant's testimony. (*Fredrich v. Wolf* (1943), 383 Ill. 638, 50 N.E.2d 755; *Garb v. Harris* (1967), 87 Ill. App.2d 437, 232 N.E.2d 83.) The court in *Van Meter v. Goldfarb* (1925), 317 Ill. 620, 148 N.E. 391, said:

> "The purpose of sections 1 and 2 of the Evidence Act is to emancipate the parties as witnesses. Such statutes were not designed to restrict the admissibility of evidence, but were intended to enlarge the competency of witnesses, so that, with the statutory exceptions, all persons might testify in an action. The purpose of the exception in favor of one suing as administrator in statutes removing the incompetency of parties as witnesses is to guard against the temptation to give false testimony in regard to the transaction in question

on the part of the surviving party, and to put the two parties to a suit upon terms of equality in regard to the opportunity of giving testimony."

And in *Firke v. McClure* (1945), 389 Ill. 543, 60 N.E.2d 220, the court said: "The Statute intends, in allowing a party to be a witness, that it shall be in cases where both parties are on equal ground." The same thought was expressed in different words in *Holton v. Dunker* (1902), 198 Ill. 407, 64 N.E. 1050, where the court held witnesses incompetent whose testimony was intended to prove that an insane person had forged names on several deeds. The court stated: "* * * as [the incompetent's] mouth is closed by reason of his insanity, the law wisely has closed the mouths of all other persons who are parties to, or directly interested in the events of, the suit * * *."

Walt Colewell's mouth was closed by reason of his insanity but the mouths of his conservator and her agent were not. Colewell was declared incompetent before the agreement between Truse and the conservator was made. Truse did not attempt to relate conversations with the incompetent; he tried to relate the ones he had with Posanski, the conservator's agent. All the parties to the transaction were available as witnesses and thus they were in a comparable position of testimonial equality.

■■ The care, management and investment of a ward's estate is statutorily imposed upon the conservator, who acts under the direction of the court. (Ill. Rev. Stat. 1969, ch. 3, para. 122.) A conservator is vested with considerable latitude in managing the estate; the case at bar concerns a transaction in furtherance of Mrs. Colewell's duties as the conservator entrusted with the management of an incompetent's estate. She entered into an agreement with Truse in behalf of the estate and there is no logical or legal reason why she should be permitted to avoid the obligation she incurred. She is attempting to silence Truse in a matter pertaining only to Truse, Posanski and herself. She cannot use section 2 as a sword instead of the shield it was intended to be. The fact that she is defending the claim as a conservator has no effect upon the claimant's competency to testify. Section 2 of the Evidence Act does not apply under the circumstances of this case.

■■ The remaining issue to be considered is whether the evidence supported the court's decision that Truse was entitled to the additional remuneration for his services. Truse's testimony that the oral contract was for $175 a week and that the estate owed him $1,400, was supported by documentary evidence. A letter written to Posanski by Truse's attorney concerning the sale of a parcel of real estate and Posanski's reply were received in evidence. Among the items listed in the attorney's letter

which were to be paid by the conservator was one for "Past due wages $1,400." Posanski's reply stated, "I think Mr. Truse's proposal is a good one and I am recommending that my client accept it." It was within the province of the trial court to determine the veracity of Truse's allegations. The court's approval of his claim was not contrary to the weight of the evidence.

The order of the Probate Division of the Circuit Court is affirmed.

Affirmed.

McGLOON, P. J., and McNAMARA, J., concur.